**HILGRAEVE, INC., Plaintiff,**

v.

**SYMANTEC CORPORATION, Defendant.**

**No. CIV.97–40370.**

United States District Court, E.D. Michigan, Southern Division.

July 16, 2003.

Ernie L. Brooks, John E. Nemazi, Robert C.J. Tuttle, Brooks & Kushman, Southfield, MI, Thomas A. Lewry, Brooks & Kushman, Southfield, MI,for plaintiff.

Martin C. Fliesler, Burt Magen, Fliesler, Dubb, San Francisco, CA, Dennis J. Levasseur, Detroit, MI, for defendant.

### MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Before the Court is Defendant's motion for partial summary judgment to limit damages. Pursuant to Local Rule 7.1(e)(2), the Court concludes that a hearing would not aid significantly in the disposition of this motion. For the reasons set forth below, the Court shall deny Defendant's motion.

### I. BACKGROUND[1]

Plaintiff Hilgraeve, Inc. ("Plaintiff") is a Michigan corporation with its principal place of business in Michigan. Plaintiff is the owner of U.S. Patent No. 5,319,776 ("'776 patent"), which issued on June 7, 1994 to inventors John K. Hile, Matthew H. Gray, and Donald L. Wakelin and was thereafter assigned to Plaintiff. Defendant Symantec Corporation ("Defendant") is a Delaware corporation with its principal place of business in California. The '776 patent is entitled "In Transit Detection of Computer Virus With Safeguard." Plain-

---

1. The Court presumes the reader's familiarity with the factual and procedural background in this matter, which is set forth in several published decisions issued in connection with this matter, the latest of which was issued by this Court on July 9, 2003. *See Hilgraeve, Inc. v. Symantec Corp.*, 271 F.Supp.2d 964, 2003 WL 21686228 (E.D.Mich.2003) (Gadola, J.). In the present opinion, the Court sets forth an abbreviated version of the relevant background facts.

tiff filed the Complaint in this action on September 15, 1997, alleging that Defendant willfully infringed the '776 patent and actively induced others to infringe. Defendant filed a counterclaim on December 30, 1997, alleging that the '776 patent is invalid and that Defendant did not infringe the '776 patent.[2]

On March 28, 2000, this Court granted Defendant's motion for summary judgment of non-infringement and dismissed this civil action. *See Hilgraeve Corp. v. Symantec Corp.* 90 F.Supp.2d 850, 859, 861 (E.D.Mich.2000) (Gadola, J.). On appeal, the Federal Circuit vacated this Court's grant of summary judgment and remanded the case. *See Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1346 (Fed.Cir.2001).[3]

Now before the Court is Defendant's motion for partial summary judgment to limit damages. Defendant raises two issues in its motion: (1) whether Plaintiff's damages from inducement of infringement should be limited to acts which occurred subsequent to September 15, 1997; and (2) whether Plaintiff's damages from inducement of infringement should be limited to instances in which Plaintiff can affirmatively prove acts of direct infringement. The Court denied Plaintiff's motion for summary judgment of infringement on remand, *see Hilgraeve, Inc. v. Symantec Corp.*, 271 F.Supp.2d 964, 2003 WL 21686228, slip op. at 34 (E.D.Mich.2003) (Gadola, J.), and, therefore, Defendant has yet to be found liable for infringement. The case is currently set for trial. Nonetheless, for purposes of this motion only, the Court presumes that Defendant is liable for both direct infringement of the '776 patent and for inducing infringement.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *See SRI International v. Matsushita Electric Corp.*, 775 F.2d 1107, 1116 (Fed.Cir.1985). "For summary judgment, fact-finding is an inappropriate exercise .... If a dispute requiring a finding exists as to any material fact, summary judgment is improper." *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1260 (Fed.Cir. 1985).

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is

---

**2.** Plaintiff filed an Amended Complaint on January 21, 2003 for the purpose of amending its name in the caption from "Hilgraeve Corporation" to "Hilgraeve, Inc." *See Hilgraeve Corp. v. Symantec Corp.*, 212 F.R.D. 345, 350 (E.D.Mich.2003) (Gadola, J.) (granting Plain-

tiff's motion for leave to file an amended complaint).

**3.** The Federal Circuit generally affirmed this Court's holding that Defendant was not licensed to practice the '776 patent. *See Symantec*, 265 F.3d at 1346.

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *See id.*

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transportation Service, Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701, 1991 WL 49687 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## III. ANALYSIS

### A. Whether Plaintiff's damages from inducement of infringement should be limited to acts which occurred subsequent to September 15, 1997

Section 271(b) of Title 35, United States Code provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271. "Thus, a person infringes by actively and *knowingly* aiding and abetting another's direct infringement. Although section 271(b) does not use the word 'knowing,' the case law and legislative history uniformly assert such a requirement." *Water Techs. Corp. v. Calco Ltd.,* 850 F.2d 660, 668 (Fed.Cir.1988); *see Hewlett–Packard Co. v. Bausch & Lomb Inc.,* 909 F.2d 1464, 1469 (Fed.Cir.1990) (holding that "proof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement"). In proving an infringer's actual intent, "[t]he plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements." *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553 (Fed.Cir.1990).

Here, Defendant asserts that, should it be found liable for inducing infringement of the '776 patent, "any damages must be limited to specific acts that occurred *after* Symantec had actual knowledge of both: (1) the '776 patent, and (2) the alleged infringement of the '776 patent." (Def. Br. at 7.) At the outset, the Court notes that Defendant is incorrect in its assertion that Plaintiff must prove Defendant's *actual* knowledge of the requisite facts. As noted above, Plaintiff need only prove that Defendant "knew or *should have known* [its] actions would induce actual infringements." *Manville,* 917 F.2d at 553 (emphasis added); *see also Insitu-*

*form Techs., Inc. v. Cat Contracting, Inc.,* 161 F.3d 688, 695 (Fed.Cir.1998) ("A crucial element of induced infringement is that the inducer must have actual or *constructive* knowledge of the patent.") (emphasis added).

In any event, Defendant admits that it possessed *actual* knowledge of the '776 patent as early as October, 1996, when it received a letter from Plaintiff's vice president of sales offering Defendant a license for the '776 patent. (*See* Def. Br. at 9; Harris Decl., Ex. 3.) Nevertheless, Defendant maintains that it did not have knowledge of Plaintiff's allegations of infringement until September 15, 1997, when Plaintiff filed the Complaint in this action. Therefore, Defendant argues that there is no genuine issue of material fact concerning whether damages should be limited to acts of inducement occurring after September 15, 1997. The Court disagrees.

On October 3, 1996, Plaintiff's Vice President of Sales, Jeffery Beamsley, wrote a letter to Mary Engstrom of Symantec Corporation which stated, in pertinent part:

> We have contacted you because Symantec Corporation appears to be actively marketing products which detect computer viruses.
>
> On June 7, 1994, Hilgraeve was awarded U.S. Patent No. 5,319,776 for "In Transit Detection of Computer Virus With Safeguard." A copy of this patent is enclosed for your information and review....
>
> We are extending a limited-time offer to license this patent if you currently use or desire to incorporate in-transit virus

detection into your company's products.....

(Harris Decl., Ex. 3.)

As Defendant concedes, this letter placed Defendant on actual notice of the existence of the '776 patent. However, Defendant contends that, in order for Plaintiff to satisfy the "knowledge" element of § 271(b), Plaintiff also was required to inform Defendant of the specific allegations of infringement in order for damages for inducement to accrue. Defendant relies primarily upon *Aro Manufacturing Company v. Convertible Top Replacement Company,* 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964) ("*Aro II*") in support of its interpretation of the "knowledge" element of § 271(b). That case concerned the "Mackie–Duluk" patent, which was "a combination patent covering a top structure for automobile 'convertibles.'" *Id.* at 478, 84 S.Ct. 1526. Although Ford Motor Company had installed the structures embodying the patented combination as original equipment on its 1952–1954 convertible models, it was not licensed to do so. *Id.* at 478–79, 84 S.Ct. 1526. Accordingly, Ford had infringed the patent. *Id.* at 479, 84 S.Ct. 1526. The Supreme Court in *Aro II* addressed whether Aro Manufacturing, which manufactured and sold replacement fabric for the convertible tops, was liable as a contributory infringer pursuant to 35 U.S.C. § 271(c).[4] *Id.* at 481, 84 S.Ct. 1526.

Interpreting the "knowledge" element of 35 U.S.C. § 271(c), the Court held that the patentee must show "that the alleged contributory infringer knew that the com-

4. Section 271(c) provides:

Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, *knowing* the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c) (emphasis added).

bination for which his component was especially designed was *both patented and infringing.*" *Aro II*, 377 U.S. at 488, 84 S.Ct. 1526 (emphasis added). The Court found that Aro had such knowledge for the period following Aro's receipt of a January 2, 1954 letter informing it of the existence of the patent, that a license had been issued under the patent, and that, "'[i]t is obvious, from the foregoing and from an inspection of the convertible automobile sold by the Ford Motor Company, that anyone selling ready-made replacement fabrics for these automobiles would be guilty of contributory infringement of said patent.'" *Id.* at 489–90, 84 S.Ct. 1526. However, as to the period preceding Aro's receipt of the letter, the Court concluded that "Aro cannot be held liable in the absence of a showing that at that time it had already acquired the requisite knowledge that the Ford car tops were patented and infringing." *Id.* at 491, 84 S.Ct. 1526. The Court therefore remanded the case to the District Court for a finding of fact on the question of Aro's knowledge for the period preceding its receipt of the January 2, 1954 letter. *Id.*

Here, Defendant argues that, under *Aro II*, Defendant cannot be liable for inducing infringement prior to the date that it knew both of the existence of the '776 patent *and* that its products were infringing the patented method. Focusing on the second element, Defendant argues that the October 3, 1996 letter failed to place it on notice that its products were infringing the '776 patent. For the following reasons, the Court disagrees.

Defendant's argument appears to be premised upon a misreading of *Aro II*. In

that case, the Supreme Court framed the issue as whether "the statute require[s] a . . . showing that Aro *knew that the tops were patented,* and *knew also that Ford was not licensed under the patent* so that any fabric replacement by a Ford car owner constituted infringement." 377 U.S. at 488, 84 S.Ct. 1526 (emphasis added). This language suggests that a patentee can establish the knowledge element of § 271(c) if the patentee can prove that the alleged infringer (1) knew of the existence of the patent and (2) knew that it was not licensed to practice the patented method.

Interpreting the knowledge requirement of § 271(b) in this manner, a reasonable jury could conclude based upon the October 3, 1996 letter that Defendant possessed the specific intent necessary to induce infringement as early as October, 1996. In the letter, Plaintiff informed Defendant that it was aware that Defendant was "actively marketing products which detect computer viruses," that Plaintiff had been awarded the '776 patent, and that Plaintiff was "extending a limited-time offer to license this patent if you currently use or desire to incorporate in-transit virus detection into your company's products . . . ." (Harris Decl., Ex. 3.) Viewing this letter in the light most favorable to Plaintiff, a reasonable jury could conclude that, as early as October, 1996, Defendant (1) knew of the existence of the '776 patent, and (2) knew or should have known that it was not licensed to practice the patented method. Proof of such knowledge would be sufficient to establish that damages for inducing infringement began to accrue as of Defendant's receipt of the October 3, 1996 letter.[5]

---

5. Defendant cites two cases, *Insituform Technologies, Inc. v. Cat Contracting, Inc.*, 161 F.3d 688 (Fed.Cir.1998), and *Black & Decker (US), Inc. v. Catalina Lighting, Inc.*, 953 F.Supp. 134 (E.D.Va.1997), for the proposition that the knowledge requirement in

§ 271(b) has been applied to limit damages to the period subsequent to the filing of the complaint. In each of these cases, however, the alleged infringer did not know of the patent in suit prior to the filing of the complaint, *see Insituform*, 161 F.3d at 695, *Black*

Finally, Defendant argues that "Hilgraeve itself understood that [the October 3, 1996 letter] would not put Symantec on notice that it was infringing Hilgraeve's patent—indeed, Hilgraeve *deliberately chose not to put Symantec on notice even though Hilgraeve believed there was infringement at the time the [l]etter was written.*" (Def. Br. at 10.) Even if Defendant were correct in this assertion, Plaintiff's intent is irrelevant to the question at hand. It is of no importance what Plaintiff intended so long as Defendant had actual or constructive knowledge of the '776 patent and that it was not licensed to practice the patented method. The Court has already found that a reasonable jury could reach such a conclusion based upon the October 3, 1996 letter. Accordingly, Defendant's argument regarding Plaintiff's intent is without merit.

■ For the reasons set forth above, issues of material fact remain concerning whether Defendant possessed the specific intent necessary to induce infringement of the '776 patent prior to September 15, 1997.[6] Accordingly, the Court shall deny Defendant's motion for summary judgment on this issue.

**B. Whether Plaintiff's damages from inducement of infringement should be limited to instances in which Plaintiff proves acts of direct infringement**

■ Defendant argues that Plaintiff's damages from inducement of infringement should be limited to instances in which Plaintiff can affirmatively prove acts of direct infringement by users of the accused products.[7] This argument is premised upon Defendant's contention that several of the accused products may be used in a manner that does not infringe the methods claimed in the '776 patent. Specifically, Defendant asserts that pcANYWHERE for Windows NT, pcANYWHERE for Windows 95, pcANYWHERE for Windows 3.1, (collectively, "pcANYWHERE products"), Norton AntiVirus for Windows NT, Norton AntiVirus for Windows 95, Norton AntiVirus for Windows 3.1, and Norton AntiVirus for DOS, (collectively, "NAV for Windows and DOS products"), may operate in a mode that does not include the step of "automatically inhibiting" storage of a virus-infected file, (*see* Def. Br. at 4–5), as required by claims 1 and 18 of the '776 patent.[8] Defendant also contends that

*& Decker*, 953 F.Supp. at 139. Here, *prior to the filing of the complaint,* Defendant received actual notice of the '776 patent and knew or should have known that it was not licensed to practice the patented method.

**6.** Defendant argues in the alternative that, "[e]ven if the [l]etter is deemed adequate notice, it is indisputable that Hilgraeve is not entitled to damages prior to October 3, 1996—the date of the letter." (Def. Br. at 10 n. 9.) The Court disagrees. Defendant admits in its brief that its outside patent counsel was aware of the '776 patent as early as February 22, 1996, when counsel cited the '776 patent in an Information Disclosure Statement filed in connection with a patent application. (Def. Br. at 3 n. 4.) Generally, a party is charged with notice of facts known to its attorney. *Link v. Wabash R. Co.,* 370 U.S. 626, 634, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Belton Indus., Inc. v. United States,* 6

F.3d 756, 761 (Fed.Cir.1993). Accordingly, Plaintiff may reach a jury on the question of whether, based upon the filing of the Information Disclosure Statement on February 22, 1996, Defendant had knowledge of the '776 patent as of that date.

**7.** The accused products are pcANYWHERE for Windows NT, pcANYWHERE for Windows 95, pcANYWHERE for Windows 3.1, Norton AntiVirus for Windows NT, Norton AntiVirus for Windows 95, Norton AntiVirus for Windows 3.1, Norton AntiVirus for DOS, Norton AntiVirus for Lotus Notes, Norton AntiVirus for Novell Netware, Norton AntiVirus for Internet Email Gateways, and Norton AntiVirus for Firewalls.

**8.** The method in claim 1 of the '776 patent includes the step of "automatically inhibiting the screened digital data from being stored on

the pcANYWHERE products do not screen for viruses at all when configured in their default mode of operation. (*See* Def. Br. at 4.)

The Court notes again that Defendant requests partial summary judgment on the issue of *damages*. Therefore, the Court presumes Defendant's *liability* for purposes of this motion, that is, the Court presumes that the accused products directly infringe the method claims of the '776 patent, and that Defendant induces others to infringe through sales of the accused products. Moreover, for purposes of Defendant's present argument, the Court presumes that the pcANYWHERE products and NAV for Windows and DOS products are capable of a non-infringing mode of operation.[9] With these presumptions in mind, the Court proceeds to the rather narrow question of whether "any recovery of damages for inducement of infringement must also be limited to only instances where Hilgraeve can affirmatively prove acts of direct infringement by users of Symantec's products." (Def. Br. at 1.) For the reasons set forth below, the Court shall deny Defendant's motion on this issue.

■ "A person *induces* infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed.Cir.1990). A party may establish intent to induce infringement through *circumstantial* evidence. *Water Techs.*, 850

F.2d at 668; *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed.Cir. 1986). Although Defendant concedes that Plaintiff may prove Defendant's liability for inducement through circumstantial evidence, Defendant suggests that Plaintiff must provide something more than circumstantial evidence in order to prove damages from inducement. Defendant relies primarily upon the Federal Circuit's non-precedential decision in *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 1 Fed. Appx. 879 (Fed.Cir.2001) in support of this proposition.

In *Chiuminatta*, the district court had granted summary judgment of damages to the patentee for each "Green Machine saw" sold by the defendants. *Id.* at 883. On appeal, the Defendant Green Machine Corporation argued "that a material question of fact has been raised regarding whether some or many of the Green Machine saws sold were actually used in a directly infringing manner." *Id.* The Federal Circuit agreed, reversing the district court and noting that "in cases in which there is a question whether every sale leads to an instance of direct infringement, a patentee must ... establish the connection between sales and direct infringement." *Id.* at 883–84. The court found the patentee's reliance upon advertisements and an Operation and Maintenance manual insufficient to support a finding that each sale of the Green Machine saw led to an act of infringement, despite the fact that the patentee had relied upon

---

said destination storage medium if at least one predefined sequence is present." '776 patent, col. 17, ll. 27–29. The method in claim 18 of the '776 patent includes the step of "automatically inhibiting the storage of said digital stream on said storage medium if any of said virus signatures have been detected." '776 patent col. 18, ll. 55–57.

**9.** Although the parties dispute whether the pcANYWHERE products and NAV for Win-

dows and DOS products actually are capable of a non-infringing mode of operation, issues of Defendant's liability are not properly before the Court on this motion. The Court construes Defendant's motion as a motion to limit *damages*, not a motion to limit *liability*. Accordingly, the Court makes no finding on the issue of whether these products are capable of a non-infringing mode of operation. This question must be resolved at trial.

essentially the same evidence at trial to prove inducement of infringement. *Id.* at 884. The court noted, however, that it was "not imply[ing] that [the patentee] is required to demonstrate a one-to-one correspondence between units sold and directly infringing customers. Proof of inducing infringement or direct infringement may be shown by circumstantial evidence." *Id.* at 884. Thus, *Chiuminatta* does not support Defendant's argument that any recovery of damages for inducement of infringement must be limited to instances in which Plaintiff can affirmatively prove acts of direct infringement by users of Defendant's products. Clearly, even under *Chiuminatta,* Plaintiff may rely upon circumstantial evidence to prove damages from inducement. Of course, should the jury in this case find Defendant liable for inducing infringement based upon circumstantial evidence, it remains to be seen whether that same evidence will be sufficient to establish damages.

Nonetheless, because Plaintiff may prove its damages from inducement of infringement through *circumstantial* evidence, Defendant's motion must be denied as a matter of law. In other words, there is no legal basis for Defendant's claim that Plaintiff must prove specific instances of direct infringement in order to recover damages from inducement with regard to those products that are capable of a non-infringing mode of operation.[10]

## V. CONCLUSION

For reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's motion for partial summary judgment to limit damages [docket entry 249] is **DENIED.**

**SO ORDERED.**

---

**10.** Although Plaintiff has offered examples of circumstantial evidence in the form of advertisements and an instruction manual to prove that Defendant induces infringement of the '776 patent through its sales of the NAV products, (*see* Lewry Decl., Ex. 1), Defendant's present motion does not test the sufficiency of Plaintiff's circumstantial evidence. Rather, as noted above, Defendant is claiming that Plaintiff may not rely upon circumstantial evidence to prove damages. (*See* Def. Br. at 14.) Accordingly, because there is no legal basis for Defendant's motion, the Court may deny the motion on this ground without further reviewing the evidence that Plaintiff has adduced in response to the motion.